UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GWENDOLYN WHITE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-cv-3821 (APM) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

I.   **INTRODUCTION**

Plaintiff Gwendolyn White brings this action under the Individuals with Disabilities Education Act ("IDEA"). She seeks review of a Hearing Officer's Determination that she believes did not fully redress Defendant District of Columbia's alleged violations of her son's right to a free appropriate public education ("FAPE"). The Hearing Officer found in favor of Plaintiff as to some claims and granted compensatory education as relief, but rejected other alleged violations.

Now before the court are the parties' cross-motions for summary judgment on all claims. For the reasons that follow, the court grants in part and denies in part both the District's motion and Plaintiff's cross-motion and remands the case to the Hearing Officer for further proceedings consistent with this memorandum opinion.

## II.     BACKGROUND

### A.     Factual Background

#### 1.     K.W.'s Individualized Education Programs

Plaintiff's son K.W. was (at the time of filing in this court) a 15-year-old resident of the District of Columbia who attended District of Columbia Public Schools ("DCPS") from 2017 to 2020.  Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J., ECF No. 34 [hereinafter Pl.'s Cross-Mot.], ¶¶ 1–2; Def.'s Mot. for Summ. J., ECF No. 31 [hereinafter Def.'s Mot.], at 4.[1]

The first individualized education program ("IEP") meeting for K.W. at issue here took place on October 20, 2017.  Def.'s Mot. at 2.  His IEP for that year recommended that K.W. receive "five hours of specialized instruction per week in reading and . . . mathematics," each "delivered outside general education," along with "120 minutes per month of occupational therapy."  *Id.*  Plaintiff asserts that, in addition to the October 2017 IEP meeting, the District also completed a routine reevaluation of K.W. in accordance with the IDEA's "triennial re-evaluation requirement" in December 2017.  Pl.'s Cross-Mot ¶ 4.  Plaintiff alleges, however, that the District did not conduct, as part of this reevaluation, (1) "a speech and language assessment"; (2) "a cognitive assessment" (as part of the standard psychological assessment); (3) "a vocational II assessment"; or (4) "a fine motor assessment" (as part of the standard occupational-therapy evaluation).  *Id.* ¶¶ 5–8.

K.W. had his next IEP meeting on October 16, 2018.  *Id.* ¶ 13; Def.'s Mot. at 2.  K.W.'s additional instruction in reading and math remained the same, but the new IEP added "preferential

---

[1] Plaintiff and Defendant both filed their cross-motion, statements of material fact, and memorandum of law within a single PDF. The court will refer to the internal pagination for each of those documents except for facts contained in the fact section of Plaintiff's memorandum, to which the court will refer by paragraph number.

seating, [classroom] location with minimal distractions, and extended time, among other accommodations." Def.'s Mot. at 2. However, the occupational-therapy allotment was reduced by 50% to 60 minutes per month. *Id*.; Pl.'s Cross-Mot. ¶ 13. Plaintiff asserts that of this allotted time, the District failed to provide 345 minutes of occupational therapy between April 2019 and October 2019. Pl.'s Cross-Mot. ¶ 14. Over eleven months, Plaintiff alleges that K.W. was deprived of over half of his IEP benefit. *Id.* ¶¶ 15–16. Further, she contends that the District did not conduct any of the assessments missed in December 2017 during the 2018–2019 school year. *Id.* ¶¶ 9–12.

K.W.'s next IEP meeting was held on October 15, 2019. Def.'s Mot. at 2; Pl.'s Cross-Mot. ¶ 21; Admin. Record [hereinafter A.R.], ECF No. 24-1, at 456.[2] Following this meeting, DCPS reduced K.W.'s occupational-therapy allotment to a half-hour per month. Def.'s Mot. at 3; Pl.'s Cross-Mot. ¶ 21. The 2019 IEP listed occupational therapy as a "Consultation Service[]," as opposed to a "Related Service[]" "[o]utside General Education" as in prior years. *Compare* A.R. 464 (October 2019 IEP) *with* A.R. 436 (October 2018 IEP), 406 (October 2017 IEP). Further, the District directed his specialized instruction in math and reading to be delivered inside a general education setting. A.R. 464. Plaintiff alleges that her son was again provided only about half of his occupational-therapy allotment through May 2020. Pl.'s Cross-Mot. ¶ 23.

The District, in the wake of the COVID-19 global pandemic, began providing online virtual learning to all students in March 2020. *Id.* ¶¶ 24–25. K.W. did not have computer or internet access for the remainder of the school year, so he could not receive both his standard and

---

[2] The Administrative Record for the proceeding below can be found at ECF Nos. 19 through 30, including as exhibits. The court will cite all references to the Administrative Record as "A.R. at [page]," except for the Hearing Officer Determination (HOD), ECF No. 19-2, which the court will cite as "HOD at [page]," reflecting the internal pagination of the document.

individualized education for April and May 2020.  *Id.* ¶¶ 27–29.  K.W. had an off-cycle IEP meeting on May 26, 2020, to address concerns about his access to education during the pandemic and to address his program, generally.  A.R. 479; HOD at 13.  His new IEP increased K.W.'s access to specialized instruction in reading and math, providing 10 hours of instruction in each subject to be delivered both inside and outside of general education.  A.R. 490.  It also continued the October 2019 IEP's allotment of thirty minutes per month of occupational therapy as a "Consultation Service[]."  *Id.*  This IEP made no other changes and did not address the underlying access problem.

### 2. *Administrative Proceedings*

Plaintiff filed an administrative due process complaint with DCPS in July 2020.  HOD at 1, 15.  The complaint advanced various challenges to the formation and implementation of K.W.'s IEPs.  *Id.* at 3–4.  As part of the proceedings, on September 1, 2020, the assigned Hearing Officer ordered the District to disclose all relevant documents relating to K.W.'s education in advance of an administrative hearing later that month.  Pl.'s Cross-Mot. ¶ 30.  Plaintiff claims to have received only some of the documents in advance of the hearing.  *Id.* ¶¶ 31–34.  The District attributes this shortfall to continued remote work by DCPS officials and limited on-site access due to the global pandemic.  *Id.* ¶ 34 (citing Pl.'s Cross-Mot., Ex. 12, ECF No. 34-1 [hereinafter Pl.'s Exs.], at 95).  The hearing was held on September 15 and 16, 2020.  Def.'s Mot. at 3.

The Hearing Officer issued his Determination on September 29, 2020.  As to claims concerning the 2017 IEP, the Hearing Officer found those claims time-barred by the IDEA's two-year limitations period.  HOD at 15–16.  As to the 2018, 2019, and 2020 IEPs, the Hearing Officer found that DCPS had denied K.W. a FAPE in part.  *Id.* at 17–26.  As a remedy, the Hearing Officer ordered a "compensatory education evaluation" for K.W.  *Id.* at 34.  That evaluation resulted in

tutoring services of 462 hours. Pl.'s Ex. 15 at 101. Since that time, Plaintiff contends that Defendant has "steadfastly refused to issue an authorization letter that complies with the September 29, 2020 HOD." Pl.'s Cross-Mot. ¶ 56.

### B.     Procedural Background

Plaintiff filed this action on December 27, 2020, against the District. *See* Compl. for Inj. & Decl. Relief, ECF No. 1. Plaintiff eventually moved for leave to file an Amended Complaint on March 29, 2021. *See* Pl.'s Cross-Mot. for Leave to File Am. Compl. & Consent Mot. to Extend Deadline to File Scheduled Joint Status Report, ECF No. 5; *see also* Am. Compl. for Inj. & Decl. Relief, ECF No. 7 [hereinafter Am. Compl.]. The Amended Complaint added two DCPS officials as Defendants: Alecia Abrams and Kerri Larkin. Am. Compl. at 3. The court accepted the Amended Complaint as the operative pleading. *See* Order, ECF No. 6.

On April 28, 2021, the District filed an Answer to all claims except the breach-of-contract claim. As to that claim, the District moved to dismiss on behalf of all Defendants, including Abrams and Larkin. Def. District of Columbia's Answer to Am. Compl., ECF No. 10; Defs.' Mot. to Dismiss Am. Compl., ECF No. 11 [hereinafter Defs.' MTD]. The court granted the motion with respect to the individual defendants but denied the motion with respect to the District, leaving it as the only Defendant remaining. *White v. District of Columbia*, No. 20-cv-3821, 2021 WL 7286820, at *2 (D.D.C. Dec. 23, 2021).

As the Amended Complaint now stands, Plaintiff asserts three violations of the IDEA: (1) a failure to comprehensively evaluate her son in 2017 (Count One); (2) a failure to implement his IEP for the 2017–2018, 2018–2019, and 2019–2020 school years (Count Two); and (3) a failure to develop an appropriate IEP for the 2017–2018, 2018–2019, and 2019–2020 school years (Count Three). Plaintiff also invokes 42 U.S.C. § 1983 to remedy the District's failure to produce K.W.'s

educational records as ordered by the Hearing Officer, as well as its alleged failure to comply with the Hearing Officer's order for compensatory education services (Count Four). Finally, she asserts a breach-of-contract claim premised on the District's alleged failure to honor an authorization it issued for certain independent evaluations of K.W. (Count Five).

After filing the administrative record for the case, the District moved for summary judgment on all claims. Def.'s Mot. Plaintiff responded with an opposition and her own motion for summary judgment. Pl.'s Cross-Mot.

### III.   LEGAL STANDARD

A parent dissatisfied with the outcome of an IDEA due process hearing may appeal that decision to a federal district court. 20 U.S.C. § 1415(i)(2)(A). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and, (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). The party challenging the hearing officer's ruling bears the burden of "persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Although the court owes some deference to the hearing officer's decision, "a hearing decision without reasoned and specific findings deserves little deference." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotation marks omitted). When neither party presents additional evidence to the district court, "a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *S.S. ex rel. Shank v. Howard Rd. Acad.*, 585 F. Supp. 2d 56, 64 (D.D.C. 2008) (internal quotation marks omitted). If the administrative record lacks "pertinent findings" and neither party enters additional evidence, then the "court may

determine that the appropriate relief is a remand to the hearing officer for further proceedings." *Reid*, 401 F.3d at 526 (internal quotation marks omitted).

## IV.     DISCUSSION

### A.     Claim Relating to the 2017 Triennial Reevaluation

In her administrative due process complaint, Plaintiff challenged the adequacy of DCPS's triennial reevaluation of K.W. conducted in November and December 2017.  A.R. at 81; Pl.'s Cross-Mot. at 4.  Plaintiff asserted that DCPS should have conducted a more thorough and comprehensive set of diagnostic assessments than it did.  Pl.'s Cross-Mot. at 4, 14–15.  The Hearing Officer found that claim to be time-barred under the IDEA's two-year limitations period. HOD at 26–27; 20 U.S.C. § 1415(f)(3)(C) (stating that a parent "shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint").  Plaintiff concedes that "the District's obligation to evaluate K.W. started outside of the two-year [statute] of limitations." Pl.'s Cross-Mot. at 11.  She nevertheless contends that, because "the IDEA conferred upon the District an ongoing obligation to evaluate K.W. in all areas of suspected disability," under the "continuing violations doctrine" "the District's obligation to evaluate continued into the limitations period and all the way to the date of the administrative due process hearing."  *Id.*  Her challenge to the 2017 reevaluation, she insists, is therefore timely.  *Id.*  The court disagrees.

The continuing-violations doctrine is an exception to a statute's general rule of accrual. *See Earle v. District of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012).  The D.C. Circuit has recognized that the doctrine might apply in two circumstances.  The first is when the conduct is such that its character as a violation does not become apparent until it is repeated within the limitations period.  *See id.*  In other words, the doctrine applies "if the fact of the violation becomes

7

apparent only by dint of the cumulative effect of repeated conduct." *Id.* The classic example of this circumstance is a Title VII hostile work environment claim. *See id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002)). Plaintiff does not contend that the cumulative-effect theory applies to her IDEA claim. She relies instead on the second application of the continuing-violations doctrine: "if the text of the pertinent law imposes a continuing obligation to act or refrain from acting." *Id.* at 307. In that circumstance, "a party can continue to violate [a continuing obligation to act] until the obligation is satisfied and the statute of limitations will not begin to run until it does." *Id.* (internal quotation marks and citation omitted). "Whether the obligation is continuing is a question of statutory construction." *Id.*

Plaintiff has cited no case, from this Circuit or anywhere else, holding that the IDEA imposes a continuing obligation to reevaluate students in all areas of suspected disability. That is likely because the statutory text does not support such a continuing obligation. The IDEA provides that a relevant state agency is required to conduct a "full and individual initial evaluation" of a student at the request of the parent or the relevant state agency before providing special education. *See* 20 U.S.C. § 1414(a)(1)(A)–(B). Such initial evaluation shall consist of procedures to determine "whether a child is a child with a disability" and "the educational needs of such child." *Id.* § 1414(a)(1)(C)(i)(I)–(II). If special education is deemed warranted, the IDEA imposes an obligation to conduct "reevaluations." *Id.* § 1414(a)(2). Such reevaluations shall be conducted "if the local education agency determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a revaluation," or "if the child's parents or teacher requests a reevaluation." *Id.* §§ 1414(a)(2)(A)(i)–(ii). The IDEA further provides that a reevaluation shall occur no more than once annually but must minimally be conducted every three years. *Id.* § 1414(a)(2)(B)(i)–(ii). (The parent and local

educational agency ("LEA") can stipulate to reevaluations either more or less frequently than the statute requires. *Id.* § 1414(a)(2)(B)(i)–(ii)). Thus, the IDEA establishes a timetable for reevaluations that is pegged to the initial evaluation and the needs of the child. It does not impose an ongoing obligation to ensure that already-performed reevaluations were adequate. Nor does it impose an obligation to initiate a reevaluation any more often than annually, absent an agreement with the parent. The IDEA's text therefore does not support applying the continuing-violations doctrine to a claim challenging the adequacy of a reevaluation.

Plaintiff cites as support for her position a recent decision from the Eighth Circuit, *Independent School District No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1083–84 (8th Cir. 2020), but that case is inapposite. Pl.'s Cross-Mot. at 13. In that case, the Eighth Circuit held that the plaintiff's claim that the school district had violated its "child-find" obligation was not time-barred, even if the claim began to accrue outside the two-year statutory window. *Indep. Sch. Dist. No. 283*, 906 F.3d at 1083. Under what is known as the "child-find" obligation, the IDEA requires LEAs to "identif[y], locate[], and evaluate[]" "children with disabilities . . . who are in need of special education and related services." 20 U.S.C. § 1412(a)(3)(A). The court reasoned that violation of the child-find obligation "was not a single event like a decision to suspend or expel a student; instead the violation was repeated well into the limitations period." *Indep. Sch. Dist. No. 283*, 906 F.3d at 1083. "Any claim of a breach falling outside of the IDEA's two-year statute of limitations would be untimely," the court held, but "because of the District's continued violation of its child-find duty, at least some of the Student's claims of breach of that duty accrued within the applicable period of limitation." *Id.* at 1083–84.

The reevaluation requirement at issue in this case is different, however. As the Eighth Circuit noted, the child-find obligation is not tied to any event or bounded by any time guideline.

9

*See* 20 U.S.C. § 1412(a)(3)(A). A reevaluation, by contrast, is a "single event," whose timing is defined by the IDEA. The statute imposes no ongoing obligation to continually assess the sufficiency of a reevaluation. The continuing-obligation doctrine therefore does not apply here, and Plaintiff's challenge to the 2017 reevaluation process is untimely. The court therefore will enter judgment in favor of the District as to Count One.

### B. Plaintiff's Failure-to-Implement Claims

With respect to Count Two, Plaintiff contests the Hearing Officer's judgment with respect to DCPS's implementation of the IEPs for the 2018–2019 and 2019–2020 school years.[3]

#### 1. 2018–2019 School Year

The IEP prepared in October 2018 called for K.W. to receive one hour of occupational therapy per month. Pl.'s Cross-Mot. ¶ 16; *see also* HOD at 28 ("[T]he Student should have received 120 minutes of occupational therapy in September, 2018, then sixty minutes per month of occupational therapy for the remainder of the school year."). Plaintiff contends that, for the 2018-2019 IEP period, the District failed to provide K.W. with any occupational therapy for the months of April 2019, June 2019, August 2019, September 2019, and October 2019, for a total of approximately 5 hours and 45 minutes of missed occupational therapy. Pl.'s Cross-Mot. at 23. The Hearing Officer found otherwise. He concluded, based on K.W.'s service tracker, that K.W. "was offered his/her mandate of occupational therapy services during every month of the school year except in November 2018 (when s/he did not receive fifteen minutes of services)." HOD at 28. To the extent Plaintiff had argued that K.W. "missed services because of absences and that

---

[3] Count Two also appears to bring a failure-to-implement claim as to the IEP for the 2017–2018 school year. *See* Am. Compl. ¶¶ 32–33. Plaintiff, however, makes no argument in support of such claim in her cross-motion. *See* Pl.'s Cross-Mot. at 22–30 (advancing arguments for failure to implement only the 2018–2019 and 2019–2020 IEPs). The court therefore does not address it. But even if Plaintiff had advanced such a claim, for the reasons already discussed, it would be time barred.

10

such services should have been made up," the Hearing Officer faulted Plaintiff for not "point[ing] to any authority to support that position." *Id.* at 28–29.

The court cannot agree with the Hearing Officer's rationale. "An IEP is not a form document. It is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). Once a student's IEP is developed, the school district "must ensure that . . . special education and related services are made available to the child in accordance with the child's IEP." 34 C.F.R. § 300.323(c)(2). Thus, it is not enough merely to "offer" the services provided by an IEP; the school district must "ensure" the child actually receives them. Here, the service tracker shows that K.W. received no occupational therapy for five months, not because K.W. was absent from school, but because DCPS simply dropped the ball. K.W. received no services in April 2019, because on his scheduled occupational-therapy day, April 23, 2019, he was completing a standardized test. A.R. at 449. Similarly, in June 2019, K.W. received no occupational-therapy services because the day on which the therapy was scheduled, June 12, 2019, he was "unavailable due to being on a fieldtrip." *Id.* at 451. In August 2019, the therapist had "difficulty locating [K.W.]," and indicated they would "confirm his schedule and make up this time." *Id.* at 452. And, in September and October 2019, K.W. apparently received no services for no reason at all, even though the applicable IEP did not expire until October 15, 2019. *Id.* at 453–54. This is not a record of "ensuring" that K.W. received the occupational-therapy hours to which he was entitled; nor is it a "de minimis" failure to implement an IEP. *See Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 274 (D.D.C. 2011). Accordingly, the court will enter judgment in favor of Plaintiff as to this aspect of her failure-to-implement claim.

### 2.     *2019–2020 School Year*

The IEP prepared in October 2019 reduced K.W.'s occupational-therapy hours to 30 minutes per month. A.R. at 464. Plaintiff contends that, during this IEP period, the District failed to provide K.W. with any occupational therapy for the months of January 2020, February 2020, April 2020, and May 2020, for a total of approximately two hours of missed occupational therapy. Pl.'s Cross-Mot. at 23–24. The Hearing Officer found no violation. *Id.* Based on K.W.'s service tracker, he concluded that K.W. did not receive 90 minutes of "occupational therapy consultation" and, because "the 'goal and import' of the occupational 'consultation' service is not entirely clear from the record," the Hearing Officer held that Plaintiff had not substantiated this aspect of her failure-to-implement claim. HOD at 29.

Again, the court does not follow the Hearing Officer's thinking. First, although true that the October 2019 IEP changed occupational therapy from a "Related Service[]" to a "Consultation[] Service," the IEP does not indicate that the provision of such consultation was optional. A.R. at 464. The October 2019 IEP indicates that K.W. would be moved to occupational therapy "consult" "as [he] has the motor skills necessary to produce small, neat, legible handwriting. Therapist will continue to monitor his ability to complete his written work for his classes." A.R. 463. Such "monitoring" apparently involved direct work with a therapist. For example, in March 2020, K.W. participated in 60 minutes of "copying activity" with the therapist. A.R. 477. That was the only month K.W. received occupational services of any kind during the first six months of 2020. Second, in calculating the total hours provided, the Hearing Officer credited 30 minutes that K.W. received in August 2019, even though that time was under the prior year's IEP. All told, K.W. received 120 of the 210 minutes (57%) of occupational therapy services he was supposed to receive under the October 2019 IEP. *Id.* at 473–76. This failure to deliver

was not de minimis. *See Beckwith v. District of Columbia*, 208 F. Supp. 3d 34, 51 (D.D.C. 2016) (concluding that shortfall in IEP services that was less than "the 33% gap that was held to be material" in an earlier Fourth Circuit case was not minimal) (citing *Sumter Cnty. Sch. Dist. 17 v. Heffernan*, 642 F.3d 478, 486 (4th Cir. 2011))).

Plaintiff raises an additional failure-to-implement challenge for the 2019–2020 school year. She asserts that DCPS failed to provide K.W. with specialized instruction in April and May 2019. Pl.'s Cross-Mot. at 24. These months required remote learning due to school closures resulting from the COVID-19 pandemic. The Hearing Officer found that K.W. could not access the specialized instruction during these months because he "could not access a computer or a 'hot spot' in order to access the services that were offered." HOD at 29. He found no denial of FAPE during those months because "Petitioner did not point to any authority suggesting that a school district has a legal obligation to provide students with laptops or hotspots during the COVID-19 pandemic." *Id.*

The court disagrees. The goal of the IDEA is to provide a "*free* appropriate public education to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A) (emphasis added). An appropriate "free public education" means special education and related services "provided at public expense" and "without charge" to the child's parent. *Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188 (1982). The IDEA contemplates that "special education" services may need to be provided "at no cost to parents," including "in the home." 20 U.S.C. § 1401(29)(A). The IDEA contains no exception that would allow suspending special education services because a global pandemic forced schools online. The court is well aware that DCPS made computers and other technology available to at least some children who needed it during the

pandemic. K.W.'s specialized instruction should not have been suspended because his family did not have the means to acquire the requisite technology.

Accordingly, the court enters judgment in favor of Plaintiff with respect to his failure-to-implement claim as to the 2019–2020 school year.

### C.     Plaintiff's Failure-to-Develop Claims

Next, in Count Three, Plaintiff challenges the sufficiency of the IEPs that DCPS developed for K.W. on October 16, 2018, October 15, 2019, and May 26, 2020. As to each of the IEPs, the Hearing Officer found partially in favor of Plaintiff. For instance, the Hearing Officer found that the October 2018 and October 2019 IEPs failed to provide K.W. with adequate specialized instruction. HOD at 18, 21–22, 24. He also held that the October 2019 and May 2020 IEPs were insufficient because they did not provide K.W. with extended-school-year services for the summer of 2020. *Id.* at 24, 26. But the Hearing Officer found against Plaintiff as to other aspects of this claim. For instance, as to all three IEPs, the Hearing Officer rejected the contention that the IEPs failed to establish sufficient and measurable baselines and goals for K.W. *Id.* at 18–19, 22–23, 25–26. He also declined to find that the IEPs' occupational-therapy hours were inadequate for both school years. *Id.* at 19–20, 23–24.

Plaintiff's challenges to these conclusions is odd. She does not squarely address the Hearing Officer's stated rationale for the actual rulings he made. Instead, she says three times, once for each contested IEP, that Ms. Coleman, Plaintiff's expert in special education, "provide[d] uncontroverted expert testimony that the goals and baselines prescribed for reading, math, and written expression were insufficient and/or immeasurable, and that K.W. should have been prescribed goals and services for" either extended-school-year services or transition services. Pl.'s Cross-Mot. at 31–32. She does the same with respect to occupational therapy hours. She repeats

three times that her expert "testified that the goals, baselines and service hours for occupational therapy were insufficient and/or immeasurable." *Id.*

The court does not know what to make of these statements. First, it is not clear whether Plaintiff is challenging the failure to consider the expert testimony or an unfounded rejection of her experts' opinions. Second, the Hearing Officer rejected Plaintiff's expert's underlying contention that IEPs require baseline setting, as well as her opinion that K.W.'s IEPs lacked measurable goals. HOD at 18 ("However, there is no requirement for IEP goals to contain 'baselines' in the IDEA."); *id.* at 19 ("While courts do require that IEP goals be measurable, a review of the goals in this case reveals that they were in fact measurable."); *id.* at 22 (holding that the October 2018 and 2019 IEPs contained "measurable" goals); *id.* at 23 (finding that the October 2019 IEP's transition goals were appropriate); *id.* at 25 (stating again that "there is no requirement for goals to have 'baselines'"). Plaintiff's cross-motion addresses none of these legal determinations or factual findings. And, third, as to occupational therapy, the Hearing Officer found another witness more convincing than Plaintiff's expert. *Id.* at 20, 24 (crediting the testimony of "Witness F" over Plaintiff's occupational therapy expert). Plaintiff's cross-motion nowhere tells the court why that weighing of the evidence was incorrect.

In short, the court finds Plaintiff's arguments with respect to her failure-to-develop claim lacking in particulars. The court is not required to guess at what errors Plaintiff ascribes to the Hearing Officer's determinations. Accordingly, the court will enter summary judgment in favor of Defendant as to Plaintiff's failure-to-develop claim.

### C. Failure to Implement/Comply with Administrative Orders

In Count Four, Plaintiff invokes § 1983 to enforce two administrative orders. First, the Hearing Officer ordered DCPS to disclose K.W.'s education records in advance of the

15

administrative hearing, but Plaintiff asserts not all records were produced. Second, the Hearing Officer ordered DCPS to fund a compensatory-education evaluation; that evaluation resulted in DCPS authorizing K.W. to receive 462 total hours of independent tutoring services. DCPS placed an expiration date on the use of those hours (December 31, 2024), *see* Pl.'s Cross-Mot., Ex. 15 at 101. Plaintiff asserts that DCPS's imposition of an expiration date is inconsistent with the Hearing Officer's order for a compensatory-education evaluation, which placed no time limit on K.W.'s use of any compensatory education. Pl.'s Cross-Mot. at 35. Defendant responds that § 1983 is an improper vehicle to enforce compliance with the IDEA and that, in any event, it has not violated any administrative order. Def.'s Opp'n to Pl.'s Cross-Mot. & Reply, ECF No. 37, at 10–12.

Whether § 1983 can be used to enforce a favorable IDEA administrative decision remains an open question in this Circuit. *See B.D. v. District of Columbia*, 817 F.3d 792, 802 (D.C. Cir. 2016). The majority of circuit courts have rejected this theory. *See* Def.'s Mot. at 12 (collecting cases). And this court rejected its use when dismissing the individual defendants from this action. *White*, 2021 WL 7286820, at *1 (holding, in the alternative, that Plaintiff had failed to state a viable § 1983 action because the statute cannot be used to compel compliance with the IDEA).

The court need not reach a firm conclusion on this thorny legal question at this stage. As discussed below, the court will remand this matter to the Hearing Officer to tailor an appropriate order for compensatory education. On remand, the Hearing Officer can determine whether to enforce his prior records-production order. And he can clarify whether or not he intended for there to be an expiration date on K.W.'s use of compensatory-education benefits.

D.  **Breach-of-Contract Claim**

Finally, Plaintiff brings a breach-of-contract claim. As framed in the complaint, that claim avers that DCPS "failed to honor the authorization letter it issued on September 4, 2020," which

approved various independent evaluations of K.W. Am. Compl. ¶ 78. In Plaintiff's cross-motion, however, the claim has morphed. She now seeks to compel DCPS to pay an expert, Dr. Natasha Nelson, who performed K.W.'s comprehensive psychological evaluation. Pl.'s Cross-Mot. at 37–38. Plaintiff asks the court to "order Defendants to pay the invoiced amount for the independent comprehensive psychological evaluation within 10 days, plus interest." *Id.* at 38. The court treats the breach-of-contract claim as Plaintiff characterizes it.

Plaintiff lacks standing to bring that claim, however. Plaintiff has not shown any injury due to DCPS's failure to pay Dr. Nelson. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). She claims that she is "responsible for the authorized amount," *id.*, but the authorization letter expressly states, "you do not need to pay your selected provider for the evaluation." Pl.'s Exs. at 87. Nor has Plaintiff shown that Dr. Nelson has sought payment from her or withheld any examination results pending receipt of payment from DCPS. Accordingly, having failed to demonstrate injury, Plaintiff lacks standing to assert her breach-of-contract claim. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### E. Remedy

The court remands this matter to the Hearing Officer to fashion a compensatory education award for DCPS's failure to implement the 2018–2019 and 2019–2020 IEPs, as described above. *See Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 526 (D.C. Cir. 2005). Such a remand is warranted because developments since the administrative hearing, including the independent evaluations of K.W. and the authorization of tutoring for K.W., put the Hearing Officer in a better position than this court to craft an appropriate compensatory remedy.

## V. CONCLUSION AND ORDER

With respect to Counts One and Three, the judgment of the Hearing Officer is affirmed and the District's Motion for Summary Judgment, ECF No. 31, is granted and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 34, is denied.

With respect to Count Two, the court grants Plaintiff's motion and denies the District's motion. The court remands the judgment on this claim to the Hearing Officer for further proceedings consistent with this opinion and to fashion an appropriate compensatory education award.

As to Count Four, the court leaves it to the Hearing Officer on remand to determine whether any relief is appropriate.

Finally, as to Count Five, the District's motion is granted, and Plaintiff's motion is denied.

This is a final order.

Dated: March 31, 2022

Amit P. Mehta
United States District Court Judge